Filed 12/22/20  P. v. Allen CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B306405 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA016472) |
| v. | |
| MICHAEL ERIC ALLEN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Affirmed.

Michele A. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————————

On June 21, 1990, the People filed an information charging defendant Michael Eric Allen (Allen) with three counts:  (1) the murder of Juan Nunez, (2) the second degree robbery of Juan Nunez, and (3) the willful, deliberate, and premeditated attempted murder of Jorge Nunez.

Evidence presented at trial showed that on the evening of March 17, 1990, brothers Juan and Jorge Nunez, who were traveling in Juan Nunez's car, stopped for a red light at the intersection of San Pedro Street and Gage Avenue when Allen and Lifalfa Green ran toward the car with their guns drawn.[1] (*People v. Allen* (Mar. 19, 2020, B301225) [nonpub. opn.] (*Allen II*); *People v. Allen* (Nov. 30, 1993, B067989) [nonpub. opn.] (*Allen I*).)  Allen approached the driver's side of the car and fired three shots at Juan Nunez from a semiautomatic handgun. (*Allen II*, *supra*, B301225.)  As Juan Nunez fell to the side, his foot slipped from the brake pedal, and the car began to roll forward.  (*Ibid.*)  Allen reached into the car, grabbed the gearshift lever, put the car in park, and ordered the brothers out of the car. (*Ibid.*)  As Jorge Nunez pulled his brother out of the car, Allen fired two more shots.  (*Ibid.*)

Green ran toward the men and pointed his gun at them. (*Allen II*, *supra*, B301225.)  Green and Allen then got into the car and drove away.  (*Ibid.*)  Juan Nunez suffered three gunshot wounds, two to the left side of his chest and one to the left portion of his back, resulting in his death.  (*Ibid.*)

---

[1] The remainder of this paragraph and the following paragraph summarize evidence presented at trial.  Additionally, we, sua sponte, take judicial notice of the *Allen I* and *Allen II* decisions discussed in this opinion.  (Evid. Code, §§ 452, subd. (d), 459.)

On April 16, 1992, a jury convicted Allen of all three charged counts, and found, with respect to the first count, that Allen perpetrated first degree murder during the commission of a robbery, and that Allen personally used a firearm in the course of committing all three offenses. (See *Allen II*, *supra*, B301225.) On June 5, 1992, the trial court sentenced Allen to life imprisonment without the possibility of parole for the first degree murder conviction; a sentence of nine years in state prison for the second degree robbery conviction; and a prison term of life with the possibility of parole for the attempted murder conviction; the prison term for the attempted murder conviction was to run concurrent with the sentences imposed on the other two counts.[2] On November 30, 1993, we affirmed Allen's judgment of conviction. (*Allen I*, *supra*, B067989.)

On March 17, 2020, Allen filed a petition for writ of error coram nobis, wherein he sought an order vacating or modifying the judgment. Although the arguments presented in his petition were not altogether clear, it is apparent that Allen was claiming he did not have the intent required to commit the instant offenses because on March 17, 1990, Allen was taking Prednisone, which "affected [his] cognition, judgme[n]t, perception and behavior . . . ."

On May 22, 2020, the trial court issued an order denying Allen's petition on the ground that his "successive claim[ ] constitute[s] an abuse of the writ of habeas corpus." (Citing, inter alia, *In re Martinez* (2009) 46 Cal.4th 945, 956 (*Martinez*).) The court observed that in a 2017 habeas petition, Allen had

---

[2] The minute order for Allen's sentencing hearing provides, inter alia, "[t]he sentences in counts 1 [(first degree murder)] and 2 [(second degree robbery)] are to run consecutive."

3

already raised the claim that his use of Prednisone adversely affected his mental state. The court denied that prior petition because it "was successive, the evidence itself was not newly discovered, the proffered claim would not have changed the result of the trial, and evidence of [Allen's] guilt and specific intent was overwhelming and in direct contradiction to his claims." The court further noted that Allen had also "raised this identical claim *twice* before the Court of Appeal" in habeas petitions he filed in 2006 and 2019, both of which were denied.

On June 11, 2020, Allen appealed the trial court's May 22, 2020 order denying his petition for writ of error coram nobis.

On September 18, 2020, we appointed counsel for Allen for the appeal now before us. On October 15, 2020, Allen's appointed counsel filed a brief that asked us to follow the procedures in *People v. Serrano* (2012) 211 Cal.App.4th 496; counsel did not identify any issues for us to review. On November 2, 2020, Allen filed a supplemental brief.

The order before us involves a denial of postconviction relief. We thus have no independent duty to review the record for reasonably arguable issues. (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1034, review granted Oct. 14, 2020, S264278 ["[W]e reject the notion that the Constitution compels the adoption or extension of [*People v. Wende* (1979) 25 Cal.3d 436] procedures (or any subset of them) for appeals other than a criminal defendant's first appeal of right because, beyond that appeal, there is no right to the effective assistance of counsel."].) Therefore, after appointed counsel has filed a *Serrano* brief, the pro per defendant must bear the burden of rebutting the presumption of correctness accorded to the trial court's ruling.

4

(See *Cole* at pp. 1039–1040; see also *People v. Giordano* (2007) 42 Cal.4th 644, 666 ["On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]"].)

" 'It has long been the rule that absent a change in the applicable law or the facts, the court will not consider repeated applications for habeas corpus presenting claims previously rejected.' " (*Martinez, supra*, 46 Cal.4th at p. 956.) " 'Such rules are necessary both to deter use of the writ to unjustifiably delay implementation of the law, and to avoid the need to set aside final judgments of conviction when retrial would be difficult or impossible.' " (*Ibid.*)

"An[ ] exception to the general rule that 'absent justification for the failure to present all known claims in a single, timely petition for writ of habeas corpus, successive and/or untimely petitions will be summarily denied,' is 'petitions which allege facts which, if proven, would establish that a *fundamental* miscarriage of justice occurred as a result of the proceedings leading to conviction and/or sentence.' [Citation.] [¶] '[A] "fundamental miscarriage of justice" will have occurred in any proceeding in which it can be demonstrated . . . that error of constitutional magnitude led to a trial that was so fundamentally unfair that absent the error no reasonable judge or jury would have convicted the petitioner . . . .' " (*Martinez, supra*, 46 Cal.4th at p. 956, italics added.)

In his supplemental brief, Allen does not challenge the trial court's implicit conclusion that he may not avoid the procedural bar on successive habeas petitions by simply restyling

his pleading as a petition for writ of error coram nobis. Rather, Allen contends the trial court should have reached the merits of his petition because (1) his claim is predicated on (a) a change in the applicable law and (b) the emergence of new facts, and (2) the fundamental miscarriage of justice exception to this procedural bar applies to this case. We reject these arguments for the reasons discussed below.

First, Allen seems to argue that Senate Bill No. 1437 constitutes a change in the law that allows him to sidestep the bar on successive petitions.[3] We disagree. Senate Bill No. 1437 "abolished the natural and probable consequences doctrine in cases of murder, and limited the application of the felony murder doctrine." (See *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1139, review granted Oct. 14, 2020, S264284.) This amendment to the Penal Code has no bearing on whether Allen's use of Prednisone prevented him from having the mens rea necessary to

---

[3] In his supplemental brief, Allen asks us to take judicial notice of Senate Bill No. 1437. Although Allen did not "serve and file a separate motion [for judicial notice] with a proposed order," (see Cal. Rules of Court, rule 8.252(a)(1); *id.*, rule 8.366(a) ["[R]ule[ ] 8.252[ ] govern[s] the hearing and decision in the Court of Appeal of an appeal in a criminal case."]), we, nonetheless, take judicial notice of Senate Bill No. 1437 because we could have considered that statute even without formally taking judicial notice of it, and this amendment to the Penal Code is a proper subject of judicial notice. (See *Gionfriddo v. Major League Baseball* (2001) 94 Cal.App.4th 400, 410, fn. 7 [" 'A request for judicial notice of published materials is unnecessary. Citation to the materials is sufficient. [Citations.]' [Citation.]"]; Evid. Code, §§ 452, subd. (a), 459.)

perpetrate the instant offenses.[4]  Allen cannot avert the bar on successive claims by simply identifying a new—but wholly inapplicable—change in the law.  (See *Martinez*, *supra*, 46 Cal.4th at p. 956 [noting that the "procedural bar of successiveness" prevents a defendant from "presenting claims previously rejected" "absent a change in the *applicable* law," italics added].)

Second, Allen concedes that the supposed causal linkage between "prednisone and violence" was discovered by the scientific community in 1998.  His claim for relief thus does not rely on any new facts that he was unable to present in his prior habeas petitions.

Lastly, Allen does not satisfy the fundamental miscarriage of justice exception to the procedural bar on successive petitions.  Allen claims that an "error of constitutional magnitude led to a trial that was so unfair that no reasonable judge or jury [citation] would have convicted [Allen] of 1st or 2nd degree murder and sentence[d him] to life without the possibility of parole . . . ."  In particular, we understand Allen to be arguing that had he been able to introduce scientific evidence concerning the adverse side effects of Prednisone, the outcome of the trial may have been different because the evidence of his guilt "was not overwhelming."

---

[4]  Indeed, in affirming the trial court's denial of a separate petition for resentencing Allen had filed pursuant to Penal Code section 1170.95, we explained that "the jury's finding that [Allen] personally used a firearm in [the] commission of first degree murder precludes the possibility that he was convicted on a felony murder or natural and probable consequences theory." (See *Allen II*, *supra*, B301225.)

Allen does not identify any connection between (1) the supposed nonexistence of such scientific evidence at the time of his trial and (2) a violation of his constitutional rights, nor is it apparent that any such connection exists.  Thus, he has not brought "himself within the miscarriage of justice exception to successiveness . . . ."  (See *Martinez, supra,* 46 Cal.4th at pp. 949–950, 967 [denying a petition for writ of habeas corpus as successive in part because the petitioner had not shown that this exception was applicable]; see also *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.  [Citations.]' [Citations.]"].)

In sum, Allen has not demonstrated that the trial court erred in ruling that his petition for writ of error coram nobis is procedurally barred.  Accordingly, we affirm the trial court's order denying his petition.

## DISPOSITION

We affirm the trial court's May 22, 2020 order denying Allen's petition for writ of error coram nobis.

NOT TO BE PUBLISHED.


                                        BENDIX, Acting P. J.

We concur:



        CHANEY, J.



        FEDERMAN, J.*

---

*  Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9